UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-7257

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY ANN DEISCH,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Mississippi

_____

(April 25, 1994)

Before REAVLEY, GARWOOD and HIGGINBOTHAM, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Terry Ann Deisch (Deisch) appeals her conviction and five year sentence for simple possession of cocaine base in violation of 21 U.S.C. § 844. Deisch asserts that the district court erred in (1) submitting the section 844 violation as a lesser included offense at all; (2) the wording of the charge on the section 844 offense; and (3) allowing the government to introduce in evidence an untimely disclosed statement. We reverse in part, affirm in part, and remand for resentencing.

**Facts and Proceedings Below**

On August 15, 1992, Lambert, Mississippi, Police Sergeant Leon

Williams (Williams) received information from a confidential informant that David Dawson (Dawson) had been in town selling drugs and planned to return for the same purpose later that evening. The informant stated that Dawson would return to Lambert at approximately 11:00 p.m. and would be driving a 1985 black Cadillac bearing Arkansas license plate WAB-185.

Williams contacted Sergeant Roy Sandefer (Sandefer) of the Mississippi Bureau of Narcotics and told him about the informant's tip. The two officers met at approximately 10:00 p.m. and began driving an unmarked car through Lambert. As the officers were driving north of Lambert, on Route 3, they passed a car that matched the informant's description of the Cadillac. The officers turned around and followed the Cadillac. Upon seeing that the Cadillac's license plate matched the informant's description, the officers turned on their car's flashing lights. The police car followed the Cadillac into an apartment complex parking lot and pulled up behind it to block its means of exiting.

Driving the Cadillac was Deisch and in the passenger seat was her boyfriend Dawson. Both Deisch and Dawson were residents of West Helena, Arkansas. Before the officers reached the car, Dawson took plastic baggies of cocaine base, commonly known as crack cocaine, from inside his pants and threw them at Deisch, ordering her to hide them. Deisch, who was seven months pregnant at the time, hid the baggies inside her bra and panties.

Williams and Sandefer instructed the couple to exit to the rear of the Cadillac. At the rear of the vehicle, Sandefer explained to the couple why they had been stopped. Sandefer then

2

shined a flashlight through the driver-side window and saw what appeared to be cocaine on the seat. Deisch and Dawson were read their rights, arrested for possession of cocaine, and taken to jail. At that point, Dawson stated "If you find any dope . . . I'm going to claim it. It's mine."

A later strip search of Deisch revealed she was carrying 3 or 4 baggies of crack cocaine weighing a total of 64.98 grams in her bra, and 3 round rocks of crack cocaine weighing in all about 1.34 grams in her panties. An inventory search of the car also uncovered a few more small rocks of crack cocaine together weighing approximately .35 grams, and, among other things, an electronic scale, rolling papers, a scanner, a pager, and another license plate.

On October 2, 1992, a grand jury indictment was returned charging Deisch[1] with one count of conspiracy to possess with intent to distribute "approximately 66 grams of cocaine base, commonly known as 'crack,' a Schedule II narcotic controlled substance," in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846 (count one), and one count of possession with intent to distribute of "approximately 66 grams of cocaine base commonly known as 'crack,' a Schedule II narcotic controlled substance," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2 (count two).[2] At trial Deisch took the position that she was not

---

[1]    Dawson was also indicted by the grand jury. On the day of trial, Dawson pleaded guilty pursuant to a plea agreement with the government.

[2]    Section 841(a)(1) prohibits the manufacture, distribution, or dispensing, or the possession with the intent to manufacture,

guilty due to duress.  Deisch testified that she did not know drugs were in the car until after the police began following them and Dawson threw the plastic bags at her.  Deisch said that she hid the drugs because she was scared to disobey Dawson since, in the past, he had threatened her with guns and hit her.

At the close of the evidence, the district court, over Deisch's objection, gave an instruction on simple possession of "a controlled substance, cocaine base, crack" in violation of 21 U.S.C. § 844(a) as a lesser included offense under count two.[3] Thereafter, the jury acquitted Deisch of both counts of the indictment, but found her guilty of the lesser included offense. Deisch, who had no prior convictions, was sentenced to sixty months in prison followed by three years of supervised release.

On appeal, Deisch argues that the trial court erred by submitting any instruction on section 844 as a lesser included offense.  We first address whether or to what extent simple possession of cocaine or cocaine base under section 844(a) may ever

---

dispense, or distribute, of "a controlled substance."  Section 841(b)(1) assigns the penalties for violation of 841(a)(1). Section 846 prohibits attempts or conspiracies to commit a crime within subchapter I of Title 21, which includes section 841(a). In addition, 18 U.S.C. § 2 defines when a person is punishable as a principal.

The term "controlled substance" is defined in 21 U.S.C. § 802(6) as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  The referenced schedules are contained in 21 U.S.C. § 812(c), and provision for amendment of the schedules is made in 21 U.S.C. § 811.

[3]    This instruction did require the jury to find that the controlled substance Deisch possessed was "cocaine base, crack"; it did not require any finding as to quantity.

The district court did instruct on Deisch's duress defense.

be a lesser included offense of possession of cocaine or cocaine base with intent to distribute it contrary to section 841(a)(1). We then turn to Deisch's contentions that in this case any such lesser included offense instruction was improper because duress was a complete defense to both the greater and lesser offenses and because the quantity of crack cocaine involved is not consistent with personal use, so that a finding of guilty of the lesser offense was not a rational alternative to acquittal of the greater. Deisch also complains that the district court erred in the wording of its charge on the lesser included offense, and improperly allowed the government to put in evidence an untimely disclosed statement.

**Discussion**

I. Lesser Included Offense

Federal Rule of Criminal Procedure 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged." The district court may give a lesser included offense instruction if, but only if, (1) the elements of the offense are a subset of the elements of the charged offense and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense yet acquit him of the greater. *United States v. Browner*, 889 F.2d 549, 550-51 (5th Cir. 1989) (*Browner I*). We address these prerequisites in turn.

*A. Elements Test*

The statutory elements test is the proper method for "determining when a federal criminal defendant is entitled to a lesser included offense instruction." *United States v. Buchner*, 7

F.3d 1149, 1152 (5th Cir. 1993), *cert. denied,* ___ S.Ct. ___ (1994). *See also United States v. Browner*, 937 F.2d 165, 169 (5th Cir. 1991) (*Browner II*) (concluding that the Supreme Court in *Schmuck v. United States*, 109 S.Ct 1443 (1989), adopted the statutory elements test).  Pursuant to the statutory elements test "an offense is not lesser included unless each statutory element of the lesser offense is also present in the greater offense." *Browner II*, 937 F.2d at 168.  In contrast to the "indictment test," under the statutory elements test the mere fact that the particular indictment in charging the greater offense includes allegations embracing all statutory elements of the putative lesser offense does not suffice to render the latter an included offense, for the statutory elements test looks only to the statutory elements of both offenses.  *Id*.[4]  Thus, the district court should have given a lesser included offense instruction *only* if all of the elements of simple possession pursuant to section 844 were also elements of possession with intent to distribute pursuant to section 841(a)(1).

      1.   <u>Elements under section 844SQcocaine base</u>

Section 844(a) provides in part:

> "[1] It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless

---

[4]    In *Browner II*, this Court ruled, under the statutory elements approach, that assault with a dangerous weapon (18 U.S.C. § 113(c)) was not a lesser included offense of voluntary manslaughter (18 U.SC. § 1112) since use of a dangerous weapon is not a statutory element of the offense of voluntary manslaughter. *Id*.  This result obtained even though we assumed, *arguendo*, that the allegation in the indictment's voluntary manslaughter count concerning the defendant's having killed the victim "by stabbing" him "with a knife" would have sufficiently alleged the "dangerous weapon" element of assault with a dangerous weapon as denounced by section 1113(c).  *Id*. at 168.

such substance was obtained directly, or pursuant to a valid prescription or order . . . . [2] Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year . . . except that if he commits such offense after a prior conviction . . . for any drug or narcotic offense . . . he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years . . . except, further, that if he commits such offense after two or more prior convictions . . . for any drug or narcotic offense . . . he shall be sentenced to a term of imprisonment for not less than 90 days but not more than 3 years . . . . [3] Notwithstanding the preceding sentence, a person convicted under this subsection for the possession of a mixture or substance which contains cocaine base shall be imprisoned not less than 5 years and not more than 20 years, and fined a minimum of $1,000, if the conviction is a first conviction under this subsection and the amount of the mixture or substance exceeds 5 grams, if the conviction is after a prior conviction for the possession of such a mixture or substance under this subsection becomes final and the amount of the mixture or substance exceeds 3 grams, or if the conviction is after 2 or more prior convictions for the possession of such a mixture or substance under this subsection becomes final and the amount of the mixture or substance exceeds 1 gram."  21 U.S.C. § 844(a) (West Supp. 1993) (bracketed numbering added).

Pursuant to the first and second sentences of section 844(a), a person can be convicted and sentenced for simple possession of any quantity of "a controlled substance"; the maximum confinement varies from one to three years depending on whether the offense was committed after one or two prior drug convictions.[5]  In accordance with the third sentence of section 844(a), a person can be convicted of simple possession of "a mixture or substance which

---

[5]    The maximum term of imprisonment under the first sentence of section 844(a) is "not more than 1 year" unless the defendant "commits such offense after a prior conviction . . . for any drug or narcotic offense," in which event the maximum is "not more than 2 years," if committed after a single such prior conviction, and "not more than 3 years," if committed after 2 or more such prior convictions.  As Deisch had no prior convictions, the maximum for her under these provisions would not exceed one year.

7

contains cocaine base" *if* the amount thereof so possessed exceeds the statutory defined quantity;[6] the sentencing range in each instance is the same, namely, not less than five nor more than twenty years' imprisonment.

Deisch's five year sentence was necessarily under the third sentence of section 844(a), as she had no prior conviction. The question thus arises whether the identity of the knowingly possessed substance as being "a mixture or substance which contains cocaine base" is, on the one hand, an element of the section 844(a) offense, or, on the other hand, a mere sentencing factor. We conclude that it is an element of the offense.

In *United States v. Michael*, 10 F.3d 838, 839 (D.C. Cir. 1993), the D.C. Circuit concluded that "the third sentence of § 844(a) . . . creates an independent crime of possession of cocaine base." The *Michael* court further clearly, albeit inferentially, held that the identity of the substance possessed as being cocaine base was an element of this independent crime.[7] The opinion relies

---

[6]    The quantity of cocaine base required for the second sentence of section 844(a) varies based on whether "the conviction is after a prior conviction for the possession of such a mixture or substance under this subsection." The statutory required quantity is less for repeat offenders. The *minimum* quantity is one that "exceeds 1 gram" (applicable to one whose "conviction is after 2 or more prior convictions for the possession of such a mixture or substance under this subsection"). For Deisch, who had no prior convictions, the minimum quantity of the "mixture or substance which contains cocaine base" would be a quantity thereof that "exceeds 5 grams."

[7]    Indeed, it is obvious that this conclusion necessarily follows from the holding that the third sentence creates a separate offense, because the third sentence deals only with possession of cocaine base. Further, it is plain that the *Michael* holding that a violation of the third sentence of section 844(a) was not a lesser included offense of section 841(a)(1)

in part on the structure of section 844(a), noting that its third sentence "is buried in one great paragraph, in contrast to the penalty section of § 841, which is clearly set off in subsection '(b)' and labeled 'Penalties.'" *Id*. at 840. It also relies on the third sentence's "person convicted . . . for the possession of . . . cocaine base" language, which it characterizes as "suggesting that the conviction itself must encompass cocaine base." *Id*. *Michael* also attaches significance to the fact that the third sentence was a completely new provision added in 1988, and that the remainder of section 844(a) did not, and does not, mention cocaine base. *Id*.[8] We are generally in agreement with the reasoning of *Michael* in these respects.

There is, however, an additional consideration that is particularly influential in our conclusion that the identity of the substance knowingly possessed as being cocaine base is an element of the offense denounced by the third sentence of section 844(a) instead of being merely a sentencing factor for a violation of the first sentence of section 844(a).[9] This consideration arises from

---

rested on its determination that the identity of the item possessed as cocaine base was an element of the former offense but not the latter. *See id*. at 839, 842.

[8]    The third sentence of section 844(a) was added by Subtitle L (consisting only of section 6371) of the Anti-Drug Abuse Act of 1988, P.L. 100-690, 102 Stat. 4181, 4370, November 18, 1988. Subtitle L addressed no other portion of section 844, and did nothing but add the third sentence. The only other change in section 844 made by the Anti-Drug Abuse Act of 1988 was in its section 6480, a part of its Subtitle N, which removed the maximum, but not the minimum, fines provided for in the second sentence of section 844(a). 102 Stat. 4382.

[9]    If the substance's identity as "cocaine base" is an offense element rather than merely a sentencing factor under section

9

the indictment clause of the Fifth Amendment,[10] which requires a grand jury indictment for any federal offense that is a felony or is punishable by confinement in a penitentiary or at hard labor.[11] It has become clear that any federal offense punishable by

_____

844(a), then it necessarily follows that the third sentence of section 844(a) creates a separate offense, because it is the only portion of section 844(a) that in terms deals with "cocaine base," and the identity of the substance possessed as being cocaine base is clearly not *required* in order to establish a violation of the first sentence of section 844(a), which merely denounces the knowing or intentional possession of "a controlled substance."  This is not to say, of course, that knowing or intentional possession of cocaine base would not also violate the first sentence of section 844(a).

[10]    "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; . . . ."

[11]    "The fifth amendment had in view the rule of the common law governing the mode of prosecuting those accused of crime, by which an information by the attorney general, without the intervention of a grand jury, was not allowed for a capital crime, nor for any felony, . . . ."  *Mackin v. United States*, 6 S.Ct. 777, 778 (1886).  The indictment clause's words "'or otherwise infamous crime'" must, by elementary rule of construction, include crimes subject to any infamous punishment, even if they should be held to include also crimes infamous in their nature, independently of the punishment affixed to them." *Ex parte Wilson*, 5 S.Ct. 935, 938 (1885).  It is not necessary that a crime be declared infamous by Congress and "the constitution protecting every one from being prosecuted, without the intervention of a grand jury, for any crime which is subject by law to an infamous punishment, no declaration of congress is needed to secure or competent to defeat the constitutional safeguard."  *Id*. at 939-40.
    "[I]mprisonment in a . . . penitentiary, with or without hard labor, is an infamous punishment" for purposes of the indictment clause.  *Mackin* at 779.  *See also In re Claasen*, 11 S.Ct. 735, 737 (1891) (same).  Confinement at hard labor, even though not in a penitentiary, is likewise an infamous punishment for these purposes.  *United States v. Moreland*, 42 S.Ct. 368 (1922).
    The Fifth Amendment's indictment clause is not, however, applicable to state prosecutions.  *Hurtado v. California*, 4 S.Ct. 111 (1884).

imprisonment for more than one year is an offense for which the Fifth Amendment requires a grand jury indictment.[12]

For anyone, such as Deisch, not previously convicted, exposure to more than one year's confinement for a violation of section 844(a) would be possible if the substance possessed was "a mixture or substance which contains cocaine base," but *not* otherwise. If the nature of the substance as cocaine base is an element of the offense, then Deisch will be afforded the protection of the indictment clause in this respect because the indictment must allege every element of the offense. *United States v. Carll*, 105 U.S. [15 Otto] 611, 26 L.Ed. 1135 (1882); *Russell v. United States*, 82 S.Ct. 1038, 1047 (1962); *Honea v. United States*, 344 F.2d 798, 803-04 (1965). As the above authorities reflect, it is not enough that the grand jury concludes that the defendant should be prosecuted for violating a particular statute; rather, the

_____

[12]     Under 18 U.S.C. § 3559(a), any offense having a "maximum term of imprisonment authorized" which is "more than one year" is a "felony." Under 18 U.S.C. § 4083, those convicted of federal offenses "punishable by imprisonment for more than one year may be confined in any United States penitentiary," while "[a] sentence for an offense punishable by imprisonment for one year or less shall not be served in a penitentiary without the consent of the defendant." *See United States v. Kahl*, 583 F.2d 1351, 1355 (5th Cir. 1978) (under section 4083 an offense carrying a one year maximum potential sentence was not an "infamous crime" for which the Fifth Amendment required indictment because confinement in a penitentiary was possible only with defendant's consent). *See also Branzburg v. Hayes*, 92 S.Ct. 2646, 2659-60 n.24 (1972):  "It has been held that 'infamous' punishments include confinement at hard labor, . . . ; incarceration in a penitentiary, . . . ; and imprisonment for more than a year, . . . .  Fed. Rule Crim. Proc. 7(a) has codified these holdings:  ' . . . An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment, or, if indictment is waived, it may be prosecuted by information . . . .'"

11

indictment must also allege every element of the offense.[13]  Only in this way is any assurance furnished that the grand jury found probable cause to believe that the defendant in fact committed acts constituting the offense in question.  This clearly appears from the reason so often given for the rules that the failure of the indictment to allege all elements of the offense may not be cured by evidence or instructions at trial,[14] nor by a bill of particulars,[15] and that the indictment may not be actually or constructively amended by adding material allegations as to the offense charged or of another offense,[16] namely, that absent such

---

[13]  The grand jury is charged with "the duty of inquiring whether there be probable cause to believe the defendant guilty of the offense charged" and "'ought to be thoroughly persuaded of the truth of an indictment, so far as their evidence goes; and not to rest satisfied merely with remote probabilities.'" *Beavers v. Henkel*, 24 S.Ct. 605, 607 (1904).  *See also Hale v. Henkel*, 26 S.Ct. 370 (1906) (grand jury is "to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony," *id*. at 373, and "may not indict upon current rumors or unverified reports," *id*. at 375).

[14]  *Honea* at 804:  "We could not say with any assurance that the Grand Jury would have returned a true bill had this vital element been brought home to them."

[15]  *Russell*, 82 S.Ct. at 1050:

"To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.  For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."

*See also, e.g., Van Liew v. United States*, 321 F.2d 664, 672 (5th Cir. 1963).

[16]  *Stirone v. United States*, 80 S.Ct. 270, 273-74 (1960):

12

rules there is lacking the necessary assurance the grand jury found probable cause to believe the defendant committed acts constituting all elements of the offense of conviction as proved at trial.

On the other hand, an indictment need not allege mere sentencing facts. *United States v. Vasquez-Olvera*, 999 F.2d 943, 944-45 (5th Cir. 1993); *United States v. Pico*, 2 F.3d 472, 474-5 (2nd Cir. 1993) (indictment charging conspiracy to import cocaine need not allege quantity, even though mandatory minimum sentence is based on quantity, because quantity is relevant only to the sentence and is not an element of the offense). *See also United*

---

"The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. . . .

The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

. . . .

The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment. Here . . . we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with." (Footnote omitted).

This rationale of *Stirone* was reaffirmed in *United States v. Miller*, 105 S.Ct. 1811, 1818-19 (1985). *See also United States v. Adams*, 778 F.2d 1117, 1122-1125 (5th Cir. 1985).

*States v. Affleck*, 861 F.2d 97, 99 (5th Cir. 1988) ("Traditional sentencing factors need not be pleaded . . . ."); *Buckley v. Butler*, 825 F.2d 895, 903 (" . . . there is no Fifth Amendment right to grand jury indictment on the sentencing facts . . . ."). Accordingly, if the third sentence of section 844(a) does not create a separate offense and the only offense established by section 844(a) is the knowing possession of any controlled substance as denounced in the first sentence thereof, so that the identity of the substance possessed as cocaine base is not an element of any section 844(a) offense but is only a sentencing factor, then, even if an indictment were required,[17] nevertheless it would not have to allege that the controlled substance possessed was cocaine base. However, were that the rule, then any defendant without a prior conviction, such as Deisch, would be exposed to "an infamous punishment" without a grand jury ever having considered whether there was probable cause to believe that the defendant did that which the law requires she have done before she can be exposed to *any* infamous punishment. Such a ruleSQwhich is the necessary consequence of holding that under section 844(a) the identity of the substance as cocaine base is merely a sentencing factorSQwould

---

[17] Arguably, an indictment would always be required because the *potential* punishment under section 844(a) would, albeit *only* in certain instances, include "infamous punishment," *i.e.*, confinement for longer than one year that may be in a penitentiary. *See Ex parte Wilson*, 5 S.Ct. 935, 939 (1885): "The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one. When the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial, except on the accusation of a grand jury."

14

emasculate the protection intended by the Fifth Amendment's indictment clause. If no indictment were required, then obviously such a section 844(a) defendant could be exposed to "infamous punishment" without the protection of a grand jury. But if an indictment is required *because* the punishment may be infamous *if* (and only if) cocaine base is what is possessed, then it is wholly illogical to authorize a punishment of that character even though the indictment does not allege cocaine base. That which requires the grand jury must likewise require allegation in the indictment, else the presence of the grand jury does nothing to subserve the purpose of requiring it.

Surely the indictment clause must be understood to mean that the defendant may not be exposed to an "infamous punishment" unless the grand jury finds probable cause to believe that he did that which the law requires him to have done before any character of infamous punishment whatever may be imposed on him.[18]

Our conclusion in this regard is supported by several decisions holding that where an offense that is otherwise a misdemeanor becomes a felony if committed in a certain way or with certain consequences, the particular attribute that makes it a

---

[18]    Theoretically, one could say that in such a situation a mere sentencing factor must be alleged in the indictment, even though not an element of the offense. But, as indicated in the text, the rule is that the indictment need not allege mere sentencing factors that are not elements of the offense. Moreover, it settled that mere sentencing factors need not be submitted to the petit jury or proved beyond a reasonable doubt. *McMillen v. Pennsylvania*, 106 S.Ct. 2411 (1986); *Affleck* at 99; *Buckley* at 902-3. It would indeed be anomalous to hold that sentencing factors must be alleged in the indictment even though they are not elements of the offense, but need not be submitted to the trial jury or proved beyond a reasonable doubt.

15

felony is an element of the offense, which must be alleged in the indictment and proved at trial. We have applied this rule to 18 U.S.C. §§ 659 (theft of shipments in commerce) and 641 (theft of property of the United States) in each of which the offense is a misdemeanor if the value of what is taken does not exceed $100, and is otherwise a felony, holding that a value of $100 or more is an element of the felony that must be alleged and proved, *Packnett v. United States*, 503 F.2d 949, 950 (5th Cir. 1974) (section 659); *Theriault v. United States*, 434 F.2d 212, 214 (5th Cir. 1970) (section 641), *cert. denied*, 92 S.Ct. 124 (1971); *Cartwright v. United States*, 146 F.2d 133, 135 (5th Cir. 1944) (former section 82, predecessor to section 641). Other courts have reached similar results. *See United States v. Scanzello*, 832 F.2d 18, 23 (3d Cir. 1987) (sections 649 and 641); *United States v. Alberico*, 604 F.2d 1315, 1321 (10th Cir.) (section 641), *cert. denied*, 100 S.Ct. 524 (1979).

For purposes of deciding if a particular factor is merely a sentencing consideration or is an offense element under section 844(a), two other circuits have also given significance to whether the presence or absence of the factor determines whether the defendant is guilty of a misdemeanor only or of a felony. In *United States v. Puryear*, 940 F.2d 602, 603-4 (10th Cir. 1991), the Tenth Circuit, relying in part on *Theriault, Alberico,* and *Scanzello*, held that the amount of cocaine base possessed by a defendant was "an essential element of simple possession under section 844(a)" and that "[a]bsent a jury finding as to the amount of cocaine, the trial court may not decide of its own accord to

16

enter a felony conviction and sentence, instead of a misdemeanor conviction and sentence, by resolving the crucial element of the amount of cocaine against the defendant."  Similarly, in *United States v. Sharp*, 12 F.3d 605 (6th Cir. 1993), the Sixth Circuit held that for section 844(a) possession of cocaine base to be sentenced as a felony, the trial jury must have found the requisite quantity because the quantity "does not merely affect the length of the defendant's sentence but determines whether he is guilty of a felony or a misdemeanor," and that for a sentencing judge to make "factual findings that convert what would otherwise be a misdemeanor into a felony seems to us an impermissible usurpation of the historic rule of the jury."  *Id*. at 608.  *Sharp* distinguished cases holding that under section 841 quantity was merely a sentencing factor and not an element of the offense, because in those cases "the offense would have been a felony regardless of the quantity" and "the felony/misdemeanor dichotomy" was not "implicated."  *Id*. at 608 & n.1.

Accordingly, we hold, consistent with *Michael*, that the third sentence of section 844(a) creates a separate offense, an element of which is that the substance possessed contains cocaine base.[19]

---

[19]    We realize that to the extent our conclusion rests on the indictment clause and felony/misdemeanor dichotomy, its logic would likewise require the quantity of cocaine base possessedSQat least five grams where there are no other convictions, but more than one gram in any eventSQto be an element of the offense denounced by the third sentence of section 844(a).  In *Michael* the court expressly refused to address this issue.  *Id*. at 842.

In *United States v. Monk*, 15 F.3d 25 (2nd Cir. 1994), the defendant was indicted under section 841(a)(1) for possession with intent to distribute "'50 grams and more of a mixture and substance containing cocaine base,'" and the district court instructed the jury on that offense and, at the defendant's

17

### 2. Elements under section 841(a)(1)SQcocaine base

Section 841(a)(1) makes it unlawful to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, "a controlled substance."[20] The term "controlled substance" is defined in 21 U.S.C. § 802(6) as "a drug or other substance, or immediate

---

request, also on simple possession in violation of section 844(a), as a lesser included offense. *Id.* at 26-7. The jury acquitted under section 841(a)(1) and convicted under section 844, and the defendant (Monk) was sentenced to 133 months' imprisonment. He contended on appeal "that, while the judge did charge the question of quantity in connection with the § 841 count . . . he did not mention anything about quantity in the charge . . . under § 844." *Id.* at 27. The Second Circuit rejected this contention, stating that quantity was not an element of the offense under section 844(a), but also observing that "[t]here is . . . no serious dispute that the substance Monk carried . . . was crack cocaine and it vastly exceeded 5 grams," *id.* at 26, that "evidence of quantity was never contested" and "Monk's basic defense was that the quantity seized from him was consistent with personal use," and that the section 844 verdict form required the jury to find possession of drugs "as alleged in the indictment." The *Monk* court expressly declined to address whether the third sentence of section 844(a) created a separate offense, an element of which was possession of cocaine base, and was thus not a lesser included offense under section 841, as held in *Michael*, "since it was the defendant himself who asked the trial judge for the lesser included offense charge." *Monk* at 27. *Cf. United States v. Baytank (Houston) Inc.*, 934 F.2d 599 at 606 (5th Cir. 1991) (invited error cannot be taken advantage of on appeal). Thus, *Monk* is not inconsistent with *Michael*. Moreover, *Monk*'s decision on quantitySQbesides possibly being influenced by the lack of prejudice thereSQis apparently made on the assumption (at least in that particular case) that the third sentence of section 844(a) does not create a separate offense, an assumption we do not accept here. If the third sentence is a separate offense, it seems inevitable that at least a quantity in excess of one gram is an element of the offense, as no lesser quantity is spoken to.

[20] Similarly, under section 841(a)(2) it is unlawful to knowingly or intentionally create, distribute, or dispense, or possess with intent to distribute or dispense, "a counterfeit substance." The term "counterfeit substance" is defined in 21 U.S.C. § 802(7). Section 841(a)(2) is not involved in this case.

precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  The referenced schedules are set forth in 21 U.S.C. § 812(c).  Provision for amendments to the schedules by the Attorney General is made in 21 U.S.C. § 811.  See also section 812(a) & (b).  The current schedules are set forth in 21 C.F.R. §§ 1308.11SQ1308.15.

The schedules list a vast number of controlled substances, among the more commonly known of which are heroin, Lysergic acid diethylamide, marihuana, opium, and several others.

Cocaine is, and has been ever since well prior to the offense in question, included in schedule II as set forth in section 812(c) in the following language:

"**Schedule II**

(a) Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

. . .

(4) Coca leaves except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; *cocaine*, its salts, optical and geometric isomers, and salts of isomers, ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph."  (Emphasis added).[21]

---

[21]     The corresponding language in 21 C.F.R. § 1308.12 (which likewise sets forth schedule II) is as follows:

"(4) Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including *cocaine* (9041) and ecgonine (9180) and their salts,

19

Section 841(b) sets out a series of penalties, introduced by the language "any person who violates subsection (a) of this section shall be sentenced as follows." Various different penalties are set out in the subsequent paragraphs of section 841(b), generally depending on which particular controlled substance is involved in the offense, the quantity thereof, and whether the defendant committed the offense after a prior drug offense conviction. For any violation of section 841(a) involving cocaine or any other of the controlled substances listed in any of schedules I, II, III or IV, the authorized sentence always includes confinement in excess of one year, and the offense is hence always a felony regardless of the drug quantity or of which particular one of the various controlled substances listed in the schedules is involved (and regardless also of the presence or absence of prior convictions or other factors).[22] More particularly, any violation

_____

isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extractions of coca leaves, which extractions do not contain *cocaine* or ecgonine." (Emphasis added).

Section 1308.12(a) explains the numbers in parentheses, stating that "[e]ach drug or substance has been assigned the Controlled Substances Code Number set forth opposite it."

[22] The sole exception to this is the provision in section 841(b)(1)(D)(4) that "distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18 [relating to special probation]."

For schedule V drugs, the maximum punishment does not exceed one year, except that if the offense is committed after a prior drug conviction the authorized imprisonment is not to exceed two years. § 841(b)(1)(D)(3).

The numbering of the schedules, as reflected in section

of section 841(a) where the controlled substance is cocaine is always a felony, regardless of whether or not the cocaine is cocaine base and regardless of the quantity involved or the presence or absence of prior convictions.

Neither "cocaine base" nor "crack cocaine" nor any equivalent term is mentioned in section 841(a) or in any of the controlled substance schedules; nor is there anything in any of the controlled substance schedules which can be said to describe "cocaine base" (or "crack cocaine") but not "cocaine," or to describe "cocaine base" (or "crack cocaine") as a discrete variety or type of cocaine. Until 1986, all this was also true of section 841(b). However, in the Anti-Drug Abuse Act of 1986, Pub. L. 99-570, October 27, 1986, 100 Stat. 3207, Congress amended section 841(b)(1)(A) and (B) so as, *inter alia*, to insert the special sentencing provisions for cocaine base which now appear at section 841(b)(1)(A)(iii) and (B) (iii). *Id*. 100 Stat. 3207-2, 3207-3. These amendments in effect provided for the same sentence range for a given amount of "cocaine base" as for an amount of cocaine 100 times as large.[23] It will be observed that the descriptions of the

---

812(b), is such that the most serious or dangerous substances are listed in schedule I, the next most in schedule II and so on, with the least serious being listed in schedule V. Schedule V drugs are to be those with "a low potential for abuse" which have "a currently accepted medical use in treatment in the United States" and potential for only comparatively "limited" "dependence" in case of abuse.

[23]    As so enacted and as presently in effect, section 841(b)(1)(A)(ii) & (iii) read as follows:

"(ii) 5 kilograms or more of a mixture or substance containing a detectable amount ofSQ
    (I) coca leaves, except coca leaves and extracts

21

covered substances given in section 841(b)(1)(A)(ii) and (B)(ii) (see note 23 *supra*) are essentially in the very same wording as that used in paragraph (4) of section (a) of schedule II appearing in section 812(c), hereinabove quoted, which schedules cocaine. The inference from this is that "cocaine base," as something distinct from cocaine or as some discrete variety or type of cocaine, is not listed or described in the controlled substance schedules. Apart from the noted provisions of section 841(b)(1)(A)(iii) and (B)(iii), neither "cocaine base" nor "crack cocaine" is mentioned in section 841(b). Further, when Congress in 1986 added the references to "cocaine base" by enacting section 841(b)(1)(A)(iii) and (B)(iii) as above described, no change was made in section 841(a)(1) or in the wording by which cocaine was listed in schedule II.

There is no statutory definition of "cocaine base." While there may be some relatively minor differences in judicial

of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;
(II) *cocaine*, its salts, optical and geometric isomers, and salts of isomers;
(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or
(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);
(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains *cocaine base."*
*(emphasis added)*

Section 841(b)(1)(B)(ii) & (iii) read exactly the same as their counterparts in section 841(b)(1)(A)(ii) & (iii) except that in (B)(ii) the specified quantity is "500 grams" instead of "5 kilograms" as in (A)(ii), and in (B)(iii) the specified quantity is "5 grams" rather than "50 grams" as in (A)(iii).

definitions, all concur that cocaine base is a form of cocaine. *See United States v. Metcalf*, 898 F.2d 43, 46 (5th Cir. 1990) ("'Cocaine base or "crack" is any form of cocaine with [a] hydroxyl radical' in the chemical compound," (quoting *United States v. Buckner*, 894 F.2d 975, 976 n.1 (8th Cir. 1990)); *United States v. Brown*, 859 F.2d 974, 975-6 (D.C. Cir. 1988) ("'Cocaine base' . . . is any form of cocaine with the hydroxyl radical; 'cocaine base' excludes, for example, salt forms of cocaine").[24]

We have generally held that the quantity listings in section 841(b)(1) are merely sentencing factors, not elements of the section 841(a) offense. *See United States v. Valencia*, 957 F.2d 1189, 1197 (5th Cir.), *cert. denied*, 113 S.Ct. 254 (1992) (no need to charge jury on quantity of heroin as "[q]uantity is not an element of the crimes proscribed by 21 U.S.C. § 841(a)(1) . . . "). Most other circuits are in accord. *See United States v. Campuzano*, 905 F.2d 677, 678 (2nd Cir.), *cert. denied*, 111 S.Ct. 363 (1990) (cocaine; citing cases). *Contra: United States v. Alvarez*, 735 F.2d 461, 467-68 (11th Cir. 1984).

Just as section 841(a)(1) does not speak to quantity, so also it says nothing about the identity of the substance involved other than that it must be "a controlled substance." Arguably, therefore, the identity of the *particular* controlled substance involved is not an element of the section 841(a)(1) offense, the

---

[24] The disagreement seems to focus on whether as used in section 841(b)(1)(A)(iii) and (B)(iii), and in the sentencing guidelines, "cocaine base" is *restricted* to that which is in smokable or rock form, commonly known as "crack." *See, e.g., United States v. Jackson*, 968 F.2d 158, 161-63 (2nd Cir. 1992) (citing cases).

only requirement being that the substance involved is "a controlled substance." *Cf. United States v. Cartwright*, 6 F.3d 294, 303 (5th Cir. 1993) (not necessary in section 841(a)(1) prosecution to show that the defendant knew the substance was cocaine, "only that the defendant knew that the substance was a controlled substance"); *United States v. Collado-Gomez*, 834 F.2d 280 (2nd Cir. 1987), *cert. denied*, 108 S.Ct. 1244 (1988) ("the government does not have to prove that the defendant knew the specific nature and amount of the controlled substance . . ."). On the other hand, it is also arguable that unless the jury, petit or grand, knows what the controlled substance is it cannot know that it is a controlled substance. No such concern, however, is implicated respecting cocaine base, for all cocaine base is cocaine, the controlled substance schedules do not mention cocaine base or describe some discrete substance which is cocaine base as distinguished and different from cocaine, and cocaine base is a controlled substance only because it is or contains cocaine. This is likewise clear from the fact that cocaine base, as a form of cocaine, was a controlled substance before the term "cocaine base" was ever introduced into Title 21, from the fact that section 841 (b)(1)(A)(ii) and (B)(ii) (see note 23, *supra*) in substance replicate the listing for cocaine in schedule II, and from the fact that when section 841(b)(1)(A)(iii) and (B)(iii) respecting cocaine base were added in 1986 there was no corresponding change in the schedule II listing embracing cocaine.

Accordingly, we conclude that the identity of the involved controlled substance as being "cocaine base" rather than simply

24

"cocaine" is not an element of any section 841(a)(1) offense. For a section 841(a)(1) offense involving cocaine base the indictment need only allege, and the jury need only find, that the substance was cocaine, and whether or not it was the "cocaine base" form of cocaine is purely a sentencing factor.[25] We are aware of no court which has held otherwise, and implicit in numerous decisions is the conclusion that for purposes of section 841(a)(1), whether or not the cocaine involved is cocaine base is merely a sentencing factor. That, of course, is the implicit holding of *Michael*.

In *United States v. Barnes*, 890 F.2d 545 (1st Cir. 1989), in affirming a section 841(a)(1) conviction for possession of cocaine with intent to distribute, and a sentence therefore under section 841(b)(1)(A)(iii) because the substance was cocaine base, the First Circuit observed:

> "It is important to note that the court, not the jury, determines the quantity and type of controlled substance appropriate under 21 U.S.C. § 841(b). . . . Section 841(b) describes the penalty provisions for violations of section 841(a), in this case possession of a controlled substance with intent to distribute. Therefore, as a penalty provision, the district court judge determines the facts at the sentencing . . . .
>
> . . .
>
> " . . . questions as to whether the mixture found was cocaine base and its specific weight were factual findings for the judge at sentencing. The jury need only have found that the three chunks seized contained some mixture of cocaine as defined in schedule II. *See* 21 U.S.C. § 812." *Id*. at 551 n.6.[26]

---

[25]   This is not to say that the defendant might not be entitled at some point to some character of notice that the government claimed the substance was cocaine base; but only that such notice need not be afforded by the indictment.

[26]   *See also id*. at 552 n.7:

*See also United States v. Easter*, 981 F.2d 1549, 1557 (10th Cir. 1992) (with respect to cocaine base, "[s]ection 841(b)(1) is merely a penalty provision and as such does not change the elements of cocaine trafficking offenses, rather it lengthens the penalties that Congress has already imposed for those offenses"); *United States v. Lopez-Gil*, 965 F.2d 1124 (1st Cir. 1992) (conviction following jury trial for possession of cocaine with intent to distribute and importation of cocaine affirmed, but sentence remanded to trial court for it to determine whether the cocaine was cocaine base); *United States v. Pinto*, 905 F.2d 47, 50 (4th Cir. 1990) (as to alleged vagueness of "cocaine base," "section 841(b) is a sentencing provision. As such, the notice required to satisfy due process is less rigorous than that applied to substantive provisions"); *United States v. Levy*, 904 F.2d 1026, 1033, 1034 (6th Cir. 1990), *cert. denied*, 111 S.Ct. 974 (1991);[27] *Collado-Gomez*

--------

" At the outset, we note that the use of the term 'cocaine base' in this statute does not present a question of giving adequate notice to possible defendants. The challenged term appears in the penalty provisions of 21 U.S.C. § 841(b). As such, the term 'cocaine base' is only relevant to enhanced penalties facing a defendant, and Congress added these penalties without altering the substantive elements of 21 U.S.C. § 841(a). . . . Thus, Congress did not criminalize any conduct which was not already illegal, and there is no problem of giving adequate notice of enhanced penalties to possible defendants."

[27] Rejecting a vagueness attack on section 841(b)(1)(B)(iii) ("cocaine base"), the Sixth Circuit states:

"Section 841(b)(1)(B), however, *is a penalty provision*. As such, it did not change the substantial elements of the offense of the possession of cocaine with the intent to distribute. Rather, it lengthened the penalties the federal law already imposed for cocaine trafficking." *Id*. at 1033.

26

("The 1986 amendments [adding § 841(b)(1)(A)(iii) & (B)(iii) concerning cocaine base] did not alter the elements of the substantive offense, which require the government to prove that a defendant knowingly and intentionally possessed a controlled substance").

3. <u>What may be lesser included under section 841(a)(1)</u>

All cocaine base is cocaine, and all is a controlled substance; all cocaine is a controlled substance; but not all cocaine is cocaine base. That the controlled substance possessed is cocaine base *is* an element of the offense denounced by the third sentence of section 844(a), but is *not* an element of any offense denounced by section 841(a)(1). Therefore, under the "statutory elements test" a violation of the third sentence of section 844(a) can not be a lesser included offense under an indictment charging possession with intent to distribute in violation of section 841(a)(1), even if, as here, the indictment alleges that the controlled substance is cocaine base. *See Browner II* at 168. However, the offense denounced by the first sentence of section 844(a) is knowing or intentional possession of simply "a controlled substance," the very same words as are used in section 841(a)(1). Just as the identity of the controlled substance as cocaine base is not an element of the section 841(a)(1) offense, so also it is not

_____

. . .

"Levy's interpretation of the statute is misguided because, as we explained above, it is a penalty provision. Under section 841(b)(1)(B), *the district court* determines the quantity and type of controlled substance for the purpose of sentencing." *Id.* at 1034.

27

an element of the offense denounced by the first sentence of section 844(a). Therefore, simple possession of cocaine, contrary to the first sentence of section 844(a), may be a lesser included offense under a charge of possessing cocaine with intent to distribute it contrary to section 841(a)(1). *Michael* at 842; *United States v. Chase*, 838 F.2d 743, 747 (5th Cir.), *cert. denied*, 108 S.Ct. 2022 (1988).

Accordingly, Deisch's sentence under the third sentence of section 844(a) may not stand. This, however, does not require that we set aside the jury's verdict which necessarily found her guilty of a violation of the first sentence of section 844(a), and assuming no other bar to sustaining her conviction for violating the first sentence of section 844(a), she will only be entitled to a remand for resentencing on that basis. *Michael* at 842. *See also Theriault* at 215; *Sharp* at 609; *Puryear* at 604; *Scanzello* at 23.

We now turn to the remaining issues presented by Deisch's appeal.

B.    *Was Simple Possession a Rational Alternative*

    1.   Duress defense

Deisch argues that any simple possession lesser included offense instruction under section 844(a) was improper because she relied upon duress, a complete and totally exculpatory defense. We have held that "'[e]ven where the defendant presents a totally exculpatory defense, the [lesser included offense] instruction should nevertheless be given if the prosecution's evidence provides a "rational basis" for the jury's finding the defendant guilty of a lesser offense.'" *Chase*, 838 F.2d at 747 (quoting *United States*

28

*v. Payne*, 805 F.2d 1062, 1067 (D.C. Cir. 1986) (citations omitted).

Nothing suggests that the jury accepted Deisch's defense of duress. Indeed, a rational jury could have found that while Deisch did not have the requisite intent to distribute the drugs, she was not under duress when Dawson asked her to hide them for him. The jury found that Deisch knowingly or intentionally took possession of drugs. This verdict is not inconsistent with the evidence produced at trial. Thus, Deisch's argument on this issue is without merit.

### 2. Magnitude of amount possessed

Deisch contends that the jury lacked a rational basis for finding her guilty of simple possession, because sixty-six grams of cocaine base is not consistent with personal consumption. Deisch maintains that under these facts the jury's acquittal for the greater offense of possession with intent to distribute is logically inconsistent with its finding of guilt for the offense of simple possession.

Under the present circumstances, whether possession of sixty-six grams of cocaine base is consistent with personal use is not determinative of this issue.[28] The offense of simple possession requires only knowing or intentional possession of a controlled substance. Under the facts presented, the jury could rationally believe, for example, that Deisch took possession of the drugs in a split second decision in which no intention was ever formed to do

---

[28] It is certainly arguable that the quantity of cocaine base possessed, *i.e.* 66 grams, is not consistent with personal use. The government presented evidence that 66 grams of crack would produce approximately 280 rocks.

anything but immediately hide the drugs to protect her boyfriend from arrest and that in the rapidly evolving events she never formed an intention to distribute the drugs to anyone.[29] Moreover, the jury may have believed that Deisch's intent accompanying her possession was merely to avoid physical harm by Dawson, but that her fear of immediate, serious and otherwise unavoidable physical harm was unreasonable and hence did not make out a duress defense under the district court's instructions thereon requiring reasonableness in those respects. At least the jury may well have entertained on such a basis a reasonable doubt as to whether Deisch had the requisite intent to distribute. Under this scenario, while Deisch would not be guilty of possession with intent to distribute, she would be guilty of simple possession. The lesser offense was hence a rational alternative.[30]

II. Court's Charge to The Jury

Deisch complains that the court's explanation of the verdict form to the jury concerning the lesser included offense of simple possession prejudicially described the lesser included offense as

---

[29] We also note that Deisch testified that she had previously left Dawson when she suspected him of selling drugs.

[30] This case is distinguishable from *United States v. White*, 972 F.2d 590, 596 (5th Cir. 1992), *cert. denied,* 113 S.Ct 1651 (1993), in which we ruled that no rational jury could find that defendants possessing twenty-one kilograms of cocaine did not intend to distribute the cocaine. The *White* court concluded that "the sheer quantity of the drugs involved negate[d] an inference of personal use." *Id*. Unlike the defendants in *White*, neither Deisch nor the government asserted that Deisch possessed the drugs for the purpose of personal consumption. The instant case is distinguishable from *White* because the evidence here supports simple possession as a rational alternative to possession with intent to distribute for reasons other than personal use.

30

"simply possession . . . without intent to distribute" and "[p]ossession, what we refer to as simple possession"; thus improperly implying that the lesser included offense was insignificant. Nothing in this instruction reflects that the court misrepresented the law or implied that the lesser included offense was insignificant. The lesser included offense instruction concerned a violation of section 844(a), offenses under which are entitled "simple possession." The court's characterization was proper and Deisch's argument is completely without merit.[31]

III. Government's Undisclosed Statement

Deisch finally contends that the government violated Federal Rule of Criminal Procedure 16(a)(1)(A) because it did not produce the substance of a statement she made on the night of her arrest. Deisch alleges that she did not learn until the morning of the trial that Sandefer planned to testify that Deisch declared, subsequent to her arrest, that she knew cocaine was in the car when she left Arkansas. Prior to trial, Deisch informed the court of the newly discovered information, but the district court did not rule on its admissibility. During direct examination of Sandefer, the government did not question him about Deisch's alleged statement. However, during cross-examination Deisch's counsel asked Sandefer if Deisch's position had ever changed concerning

---

[31] Deisch also complains that the section 844(a) charge failed to require the jury to find that more than five grams were possessed. Because of our holding that the third sentence of section 844(a) is not a lesser included offense, and because quantity is plainly irrelevant to the simple possession offense of the first sentence of section 844(a), Deisch's complaint in this respect is moot.

whether she knew she possessed cocaine on August 15, 1992. Sandefer responded "no." On re-direct, the government sought to clarify the ambiguity which under the circumstances was inherent in the referenced cross-examination question and answer, by asking Sandefer what Deisch's position was about her knowledge of the cocaine. Sandefer then testified that Deisch had said, just after her arrest, that she knew prior to leaving Arkansas that cocaine was in the car. Although Deisch's lawyer objected because the statement had not been timely disclosed, the court overruled the objection and concluded the challenged testimony had been opened up by Deisch during cross-examination.

We review discovery rulings for abuse of discretion and will order a new trial only when a party demonstrates prejudice to his substantial rights. *United States v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991). Moreover, "[a] defendant may not complain on appeal that he was prejudiced by evidence relating to a subject which he opened up at trial." *United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir.), *cert. denied,* 92 S.Ct. 122 (1971). The district court did not abuse its discretion in finding that Deisch, knowing of the statement allegedly made to Sandefer, nevertheless opened the door to the testimony of which she now complains. No reversible error is shown.

### Conclusion

For the foregoing reasons, we REVERSE the felony conviction for possession of cocaine base under the third sentence of section 844(a), we AFFIRM the misdemeanor conviction for possession of a controlled substance under the first sentence of section 844(a),

32

and we REMAND for resentencing under the second sentence of section 844(a).

AFFIRMED in part; REVERSED in part; REMANDED for resentencing