**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-51134
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

KENNETH SCOTT COLLINS, also known as Mike Kent,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Texas
(W-97-CR-35-2)
November 14, 2002

Before JOLLY, JONES, and PARKER*, Circuit Judges.

PER CURIAM: **

Kenneth Scott Collins appeals his convictions and resulting

sentences for conspiracy to distribute and possess with intent to

distribute more than 1,000 kilograms of marijuana and conspiracy to

---

*Judge Parker concurred in the above opinion before his retirement on November 1, 2002.

**Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

commit money laundering in violation of 21 U.S.C. §§ 841(a)(1), 846; and, 18 U.S.C. § 1956(h).  We affirm.

## I.  Background.

On November 15, 2000, Appellant Collins was arrested following a lengthy investigation into a marijuana warehousing and transportation scheme involving the interstate transfer of large amounts of drug-related money.

At trial in September 2001, the follow testimony was adduced. Collins admitted to associate and driver Jim Gregory in the late 1980s that he was a marijuana smuggler.  Associate Sandra Eames testified that in the early 1990s Collins worked out of a Houston warehouse where marijuana was stored and repackaged for a marijuana smuggling and distribution organization known as "the Rice organization."  Eames had seen Collins at an El Monte, California, warehouse judging the quality of marijuana that he would take and sell in Ohio.  The marijuana would be loaded into a moving truck, and household furniture would be put on top of the marijuana for the cross-country drive.  Andrew Cavender, one of Eames's drivers who transported marijuana and cash, briefly drove for Collins because Collins's regular driver had been killed in a motorcycle accident. Eames testified that Collins and Cavender had one another's pager numbers.  She also testified that there was money from the Ohio transactions in payment for the marijuana shipment.

In December of 1991, Collins asked Gregory to take some money from New York to El Paso. When Gregory agreed, Collins met Gregory in a New York hotel room and put approximately $50,000 on Gregory's body to fly back with. Gregory stated that nobody ever said where the money came from but he assumed that it was proceeds from marijuana sales because Collins stated that it had to go back to Glenn Rice, the head of the organization, to be forwarded to "the Mexicans" for Christmas. Collins later had Gregory pick up $800,000 in two suitcases near a Dallas airport and drive the money to Rice at an El Paso motel. Each time, Gregory was paid for having transported the money from Collins to Rice.

Cavender testified regarding the usual mode of operation on runs he had made for Eames: someone would pick up his truck and load it with marijuana, then redeliver it to him; Cavender would then drive the load to its destination and currency would be loaded into his truck for the return trip. Cavender testified that, after having driven a few loads for Eames, he was told that "a driver for the other part of the organization . . . had been killed in a motorcycle wreck" and he was asked to haul a load of marijuana for "the other guy." When Cavender went to meet "the other guy," he met Collins. Cavender met with Collins and Eames at a Hilton hotel in Ontario, California. Cavender was introduced to Collins and was told "what the situation was and how it worked on [Collins's] end." Cavender was told that "[they] would do the same thing." It was discussed that another person would pick up Cavender's truck and

3

load it; Cavender would drive his truck to Ohio, park it at a Holiday Inn where someone would again pick it up to unload it and then return Cavender's truck to the hotel parking lot. Collins was present at and participated in this conversation, agreeing with everything that was said. While Cavender was at the Ohio hotel, Collins came to the hotel and picked up Eames and Cavender's wife for a shopping spree. Cavender was later told that his truck had been unloaded and that some bags had been put inside the furniture for him to take back to California. Cavender understood that the bags would contain money. Cavender was paid $10,000 for returning the money to California and $25,000 for hauling the marijuana.

Duane Boggs, a driver for the drug operation, testified to having driven loads containing the following amounts of marijuana: 2,000 pounds, 4,000 pounds, 3,000 pounds, and 7,000 pounds. That 16,000-pound aggregate equates to 7,200 kilograms. Cavender testified that he had driven loads containing the following amounts of marijuana: 2,000 pounds, 2,000 pounds, 2,000 pounds, and 1,900 pounds. This 7,900-pound aggregate equates to 3,555 kilograms of marijuana. Cavender also testified that he had driven loads which he did not load or unload into the truck and that he thus had no idea of the quantity contained in them. Gregory testified that he saw the following amounts of marijuana go through the operation's various warehouses: 2,000 to 4,000 pounds, 1,600 to 2,000 pounds, and 6,000 pounds. He estimated the amount of marijuana that went through the larger of the two California warehouses at 25,000 to

4

30,000 pounds.  He estimated the amount of marijuana that went through the Dallas, Texas, warehouse at 20,000 pounds.  Gregory testified about a conservative aggregate of 52,800 pounds or 23,760 kilograms of marijuana.  Finally, there was evidence that 5,000 to 6,000 pounds of marijuana were seized from a Houston warehouse in January 1993.  Another 1,400 pounds were seized from a warehouse in April 1996.  A quantity of 9,000 pounds was seized from a Dallas warehouse in February 1997.[1]  This conservative aggregate of 15,400 pounds equates to 6,930 kilograms of marijuana.

Collins was convicted following a jury trial and now appeals on these bases.

## II.  Analysis.

### A.

Collins first argues that the district court erred in refusing to submit his requested jury charge on a lesser-included-offense as to drug quantity.

A "defendant may be found guilty of an offense necessarily included in the offense charged."  FED. R. CRIM. P. 31(c); *United States v. Deisch*, 20 F.3d 139, 142 (5th Cir. 1994), *overruled on other grounds by United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000), *cert. denied*, 531 U.S. 1177 (2001).  A lesser included

---

[1]  The Dallas raid and other associated raids also resulted in finding ledgers recording the weights of individual packages of marijuana, bags in which to carry the packaged marijuana, large amounts of money, and weapons including, for example, an AR-15 semi-automatic rifle.

offense instruction is appropriate only if "(1) the elements of the offense are a subset of the elements of the charged offense and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense yet acquit him of the greater." *Deisch*, 20 F.3d at 142. "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States*, 380 U.S. 343, 349 (1965). This court applies a "two-tiered standard of review" to the district court's treatment of a lesser-included-offense instruction request. *United States v. Lucien*, 61 F.3d 366, 372 (5th Cir. 1995). The elements prong is reviewed *de novo*; the evidentiary prong is reviewed for an abuse of discretion. *Id.*

Collins does not challenge the jury's finding of a conspiracy to distribute marijuana. Instead, he argues only that the jury could rationally have convicted him of conspiring to distribute less than 1,000 kilograms of marijuana. The evidence adduced at trial involved enormous amounts of marijuana. No rational juror could have found that the conspiracy to distribute marijuana existed but that it involved less than 1,000 kilograms. *See Deisch*, 20 F.3d at 142. Collins's argument is unavailing.

B.

Collins next argues that there was insufficient evidence to

6

support his conviction for conspiracy to commit money laundering. As he did not present any evidence, Collins preserved his claim for appellate review by moving for a judgment of acquittal at the close of the Government's evidence. *See United States v. Izydore*, 167 F.3d 213, 219 (5th Cir. 1999).

This court reviews *de novo* a district court's denial of a motion for judgment of acquittal. *Id.* "When reviewing the sufficiency of the evidence, this Court views all evidence, whether circumstantial or direct, in the light most favorable to the Government with all reasonable inferences to be made in support of the jury's verdict." *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997). The standard for reviewing a claim of insufficient evidence is whether "a rational trier of fact could have found that the evidence establishes the essential elements of the offense beyond a reasonable doubt." *United States v. El-Zoubi*, 993 F.2d 442, 445 (5th Cir. 1993). "The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Moser*, 123 F.3d at 819.

There was evidence that Collins had been involved in a marijuana-smuggling operation for many years. He had one associate transport large amounts of money to the leader of the operation in a clandestine manner. There was also evidence that Collins met with

7

a load driver and agreed that the driver would transport a load of marijuana from California to Ohio and then take cash back to California on the return trip. A rational trier of fact thus could have found that the evidence establishes the essential elements of the offense beyond a reasonable doubt. *El-Zoubi*, 993 F.2d at 445.

C.

Collins next argues that the district court improperly sentenced him based on 60,000 pounds of marijuana. He argues that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the jury did not make a finding as to drug quantity. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. *Apprendi* applies only to facts that increase the statutory maximum sentence. *Id.*

Relying on his contention that his drug conviction is invalid because of the district court's refusal to give the lesser-included-offense charge, Collins argues that the statutory maximum sentence in his case should be based on the money-laundering offense. This argument is unavailing because, as explained above, Collins' drug conviction was valid.

Collins was indicted for and convicted of conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.

8

Section 841(b)(1)(A)(vii) provides that the punishment for this offense is a term of imprisonment between 10 years and life. Collins' 480-month sentence on the drug-conviction count did not exceed the statutory maximum and is thus not violative of *Apprendi*. *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000), *cert. denied*, 531 U.S. 1182 (2001).

## D.

Collins finally argues that the four-level enhancement applied by the district court for his leadership role in the offense is unsupported by the evidence at trial or by the factual basis contained in the pre-sentencing report (PSR). He contends that he was merely an independent operator that used the Rice organization only as a supply source.

The district court's determination that the defendant was an organizer or leader in the offense is a factual finding reviewed for clear error. *United States v. Dadi*, 235 F.3d 945, 951 (5th Cir. 2000), *cert. denied*, 532 U.S. 1072 (2001). As long as a district court's finding on a sentencing issue is plausible in light of the record read as a whole, the finding is not clearly erroneous. *Id.* The PSR generally bears sufficient indicia of reliability to support a district court's factual findings, and the district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. *United States v. Cabrera*, 288 F.3d 163,

9

173-74 (5th Cir. 2002). The defendant bears the burden of demonstrating that the PSR is inaccurate. *United States v. Lage*, 183 F.3d 374, 383 (5th Cir. 1999), *cert. denied*, 528 U.S. 1163 (2000).

Under U.S.S.G. § 3B1.1(a), a four-level increase to an offense level is warranted "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In determining whether a defendant was a leader, a court should consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." § 3B1.1, comment (n.4).

The PSR's description of the drug-trafficking operation states that Collins and Eames were the two lieutenants in the operation and that Collins handled the marijuana distribution for the Ohio area. It also contained information that the operation was controlled by Rice and Collins. This is supported by Cavender's testimony that Eames asked if he would like to drive for Collins, who was described as "the other part of the organization." The district court's finding that Cavender was a leader or organizer of the offense was supported by the record and was not clear error.

**III. Conclusion.**

For the reasons stated herein, we AFFIRM the district court.