**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brian Edward BUTLER, Defendant–
Appellant.**

**No. 94–30369.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided Jan. 22, 1996.

Judy Clarke, Federal Defender of Eastern Washington and Idaho, Spokane, Washington, for defendant-appellant.

Timothy J. Ohms, Assistant United States Attorney, Spokane, Washington, for plaintiff-appellee.

Before: WRIGHT, ALARCÓN, and CANBY, Circuit Judges.

ALARCÓN, Circuit Judge:

Brian Edward Butler was convicted of possession of cocaine base, a controlled substance. He was sentenced to a term of five years' imprisonment pursuant to 21 U.S.C. § 844(a). Prior to trial, he moved to suppress evidence that cocaine base was found concealed in his underwear during the booking process. He contends that a reversal is compelled because the officers did not have probable cause to arrest him.

He also argues that the imposition of a felony sentence for simple possession of a controlled substance must be reversed because the district court failed to instruct the jury that the quantity of cocaine base is an element of a violation of section 844(a).[1]

We affirm because we conclude that there was probable cause for the arrest. The crime report submitted by the victim was credible and adequately corroborated by the independent observations of the arresting officer. We also hold that the quantity of the controlled substance possessed by the defendant is a sentencing factor, and not an element of the crime prescribed by 21 U.S.C. § 844(a).

I

During the evening of May 20, 1993, Butler and another male went to a used car lot operated by Raymond Salley. Butler offered to trade a 1983 El Camino for Salley's 1985 Camaro Z–28. Butler said that the 1983 El Camino had been driven 144,000 miles. He presented Salley with the title for the El Camino and his California driver's license. Salley made a copy of the driver's license and retained it. He testified that he was "nervous" about the proposed trade because Butler's vehicle was worth more money. When he attempted to verify the identification number of the El Camino, Salley could not discern the numbers on the door. Salley expressed his concern about the proposed trade to his partner in the car lot business. After learning that the identification number on the dash board matched the documentation presented by Butler, Salley's partner suggested that they request a cash payment of $200, in addition to the trade-in. Butler agreed and the deal was consummated.

---

1. Butler argues further that the identity of the substance is an element of § 844(a) but not § 841(a), and that it was therefore improper to convict him of violating § 844(a) as a lesser included offense. We do not address this argument, however, because Butler's counsel requested the lesser included offense instruction and helped draft it. Any error with regard to the lesser included offense instruction was invited by the defense. See *United States v. Baldwin*, 987 F.2d 1432, 1437 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993). ("Where the defendant himself proposes the jury instruction he later challenges on appeal, we deny review under the invited error doctrine). We express no view regarding whether the identity of the controlled substance is an element of section 844(a). Resolution of that question must be deferred to another day.

The following morning, Salley took the El Camino to the Washington State Patrol. After inspecting the car, the officers informed him that the El Camino was a 1987 vehicle that had been stolen in California. They also told him that the El Camino had been driven only 44,000 miles. The officers impounded the car. When Salley asked if he could make a stolen vehicle report concerning the Camaro he had sold to Butler, they told him he would have to make his report to the City of Spokane Police Department.

Salley called his partner for a ride to the used car lot. On the way back, Salley saw the Camaro at 1507 East 1st Street. Butler and the same man who had accompanied him to the car lot were in the car. Salley called the State Patrol and reported that he had found the Camaro. An officer told him to make no attempt to repossess the vehicle and to leave the neighborhood because it was the scene of gang activity.

When he returned to the car lot, Salley called the Spokane Police Department to report the theft of the Camaro. Officer J. Haugh came to the car lot to obtain a stolen vehicle report. Salley reported the facts set forth above to Officer Haugh, including the license number of the Camaro and the fact that it had just been seen at 1507 East 1st Street. Salley also told him that Butler and his companion had changed clothing, and that they appeared to be gang members. Salley gave Officer Haugh a copy of Butler's California driver's license.

After obtaining the report, Officer Haugh drove by 1507 East 1st Street in search of the Camaro. The car was not seen at that location. Haugh observed two Spokane officers driving through the area. They informed Officer Haugh that the house at 1507 East 1st Street would be raided later that day.

During the 1:30 p.m. roll call for the Spokane Police Department officers on the swing-shift, Salley's stolen car report was discussed in some detail. Spokane Police Officer Brian L. Schwarz was present at the roll call. He was informed that the stolen car, a brown Camaro bearing license number 887 CRS had been seen earlier that day at 1507 East 1st Street. He also received information concerning Butler's name and description. He was also aware that Spokane Police officers believed that the residence at that address was a drug house and was frequented by gang members.

When Officer Schwarz drove by 1507 East 1st Street, he observed the stolen Camaro. He saw a man fitting Butler's description in the car. After Officer Schwarz drove past the Camaro, the suspect drove down the street and made a left turn. Officer Schwarz and officers in two other police cars stopped the Camaro and arrested the driver for possession of stolen property. As the driver was being handcuffed, he identified himself as Brian Butler. In searching Butler's pockets, Officer Schwarz found a plastic bag that contained a cocaine residue. He also found $1,239 in Butler's rear pocket. An additional $1,600 was found in a flashlight lying on the floor of the car. At the station, a booking officer found 10.9 grams of cocaine base in Butler's underwear.

Butler was indicted for possession with intent to distribute over five grams of cocaine base in violation of 21 U.S.C § 841(a)(1). He made a pretrial motion to suppress the evidence seized during the arrest and the strip search. The district court denied the motion.

Butler testified at trial that he possessed the cocaine base solely for his personal use. In his proposed jury instructions, Butler requested the court to instruct the jury that simple possession of cocaine base is an offense included within the crime of possession with intent to distribute over five grams of cocaine base.[2]

2. Butler's proposed instruction stated as follows:
   Mr. Butler is charged with possessing with intent to distribute over 5 grams of cocaine base. I have explained to you what three things the government must prove beyond a reasonable doubt before you may convict him of that crime. If you find that the government has not satisfied its burden of proof, then, before you return a verdict of not guilty, you must determine whether Mr. Butler is guilty beyond a reasonable doubt of simple possession of cocaine base.
   In order to find Mr. Butler guilty of simple possession of cocaine base, the government must prove beyond a reasonable doubt that Mr. Butler knowingly or intentionally possessed crack cocaine.

During the conference on jury instructions, the court told the prosecutor and Butler's counsel to attempt to redraft an instruction on the included offense of possession of cocaine base. At the next court session, Butler's counsel expressly stated that he had no objection to the revised instruction on the included offense.

The court instructed the jury as follows:

As previously stated, the defendant is charged with possession with intent to distribute cocaine base. I have explained to you the two things the government must prove beyond a reasonable doubt before you may convict him of that crime. If you find that the government has not proven beyond a reasonable doubt that the defendant intended to distribute cocaine base, then you should return a not guilty verdict as to the Indictment.

If you return a not guilty verdict as to the Indictment, but you find that the government has proven beyond a reasonable doubt that the defendant knowingly and intentionally possessed cocaine base, then you should return a guilty verdict to the offense of possession of cocaine base.

The instruction makes no reference to the amount of cocaine base.

The jury returned the following verdict:

*Part A*

**WE, THE JURY,** find the defendant, BRIAN EDWARD BUTLER, <u>NOT GUILTY</u> [Handwritten] of the crime of
    not guilty/guilty
possession with intent to distribute cocaine base.

**Consider Part B only if you find the defendant not guilty in Part A.**

*Part B*

**WE, THE JURY,** find the defendant, BRIAN EDWARD BUTLER, <u>Guilty</u> [Handwritten] of the crime of
    not guilty/guilty
possession of cocaine base.

**DATED** THIS <u>13th</u> [handwritten] day of May 1994.

        [Signature]
        PRESIDING JUROR

Because the undisputed evidence at trial showed that Butler had more than five grams of cocaine base in his possession, the district court sentenced Butler to the statutory minimum sentence of five years in prison.

## II

■ Butler asserts that the facts known to the arresting officers were insufficient to demonstrate probable cause to believe that he had defrauded Salley of his property. Butler maintains that the officers failed to conduct an independent investigation to corroborate Salley's crime report. We review a district court's probable cause determination de novo, accepting the district court's factual findings unless clearly erroneous. *United States v. Arzate–Nunez*, 18 F.3d 730, 735 (9th Cir.1994).

■ "Probable cause exists when the police know 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'" *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990) (citation omitted). "Courts look to the totality of the circumstances known to the officers" in determining whether there is probable cause for an arrest. *Id.*

Here, Officer Schwarz received information at roll call that a man named Brian Butler had taken a Camaro from Salley's used car lot, after he induced Salley to accept a stolen car as a trade-in. Officer Schwarz received a description of Brian Butler and the license number of Salley's Camaro. Officer Schwarz was told that Salley had seen Brian Butler and his companion in the Camaro at 1507 East 1st Street earlier that day. In addition, Officer Schwarz was aware through police channels that the residence at 1507 East 1st Street was a drug house.

■ Probable cause to arrest may be based upon hearsay statements. *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978). An officer may arrest based on information relayed to him or her through official police channels. *See United States v. Calhoun*, 542 F.2d 1094, 1100 (9th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977) (the

fact that the arresting officer does not have personal knowledge of the facts underlying the determination that probable cause exists does not invalidate the arrest). Probable cause can also be demonstrated through the collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer. *United States v. Bernard*, 607 F.2d 1257, 1267 (9th Cir.1979). Here, Officer Schwarz did not interview Salley, nor did he receive Officer Haugh's crime report prior to arresting Butler. He heard a summary of the facts in the crime report during roll call.

Butler argues that the collective knowledge of the officers is insufficient to demonstrate probable cause because the officers failed to conduct an independent investigation to determine whether the El Camino had been stolen. We disagree.

■ In assessing the totality of the circumstances, to determine whether probable cause existed prior to a warrantless arrest, the Supreme Court has instructed that "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny on the basis of his knowledge unnecessary." *Illinois v. Gates*, 462 U.S. 213, 233–234, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983).

Here, Salley reported the facts to the Washington State Patrol and the Spokane Police Department. The crime report he signed stated, "I understand that I may be charged with violation of R.C.W. 9A.76.020 'Obstructing a Public Servant' by filing a false report."

There is no evidence to support an inference that Salley fabricated his report to the police. The facts reported by Salley were " 'sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.' " *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir.1991) (citation omitted).

The independent observations of Officer Schwarz corroborated the details furnished to the police. He located the stolen Camaro at the place described by Salley. Officer Schwarz was aware that the residence located at 1507 East 1st Street was known to be a gathering place for drug dealers. The driver of the Camaro matched the description of the thief furnished by Salley. We are persuaded that Officer Schwarz's independent investigation provided sufficient corroboration of the detailed facts concerning the crime to justify the warrantless arrest of Butler. Because probable cause existed for Butler's arrest, the district court did not err in denying the motion to suppress.

### III

■ Butler contends that subsection 844(a) contains two crimes: possession of a controlled substance and possession of cocaine base. Possession of cocaine base carries a five year minimum sentence if the quantity exceeds five grams. He argues that the court cannot impose a five year sentence without an express jury determination following appropriate instructions that he was in possession of more than five grams of cocaine base. Whether the *quantity* of cocaine base, must, where applicable, be treated as an element of the crime defined in § 844(a), is a question of first impression in this circuit. The interpretation of a statute is a question of law which we review de novo. *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir.1994).

Subsection 844(a) reads in pertinent part: It shall be unlawful for any person knowingly or intentionally to possess a controlled substance.... Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, ... except that if he commits such offense after a prior conviction [for a drug offense], he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years.... Notwithstanding the preceding sentence, a person convicted under this subsection for the possession of a mixture or substance which contains cocaine base shall be imprisoned not less than 5 years and not more than 20 years ... if the conviction is a first conviction under this subsection and the amount of the mixture or substance exceeds 5 grams, if the conviction is after a prior

conviction for the possession of such a mixture or substance under this subsection becomes final and the amount of the mixture or substance exceeds 3 grams, or if the conviction is after 2 or more prior convictions for the possession of such a mixture or substance under this subsection becomes final and the amount of the mixture or substance exceeds 1 gram....

21 U.S.C. § 844.

"Our goal in construing a statute is to ascertain the intent of Congress in order to give effect to its legislative will.... In doing so, we begin with the language of the statute itself, looking not only to the disputed provision, but also 'to the provisions of the whole law, and to its object and policy.'" *F.D.I.C. v. McSweeney,* 976 F.2d 532, 537 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993) (citation omitted).

The first sentence of subsection 844(a) unquestionably contains all the elements of a crime. See *Morissette v. United States,* 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952) (at common law "[c]rime ... generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand"). The words "[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance" identify *the mental state* and the conduct Congress intended to prohibit.

The second sentence of subsection 844(a) refers to the penalty to be imposed by the court for a violation of the crime of knowingly or intentionally possessing a controlled substance. See *United States v. Michael,* 10 F.3d 838, 840 (D.C.Cir.1993) ("[t]he second [sentence of subsection 844(a)] establishes a penalty scheme for various persons who violate the prohibitions of the first sentence").

The third sentence of subsection 844(a) was added by Congress in 1988. Pub.L. 100–690, § 6371. It begins with the words "[n]otwithstanding the preceding sentence, a person convicted under this subsection...." 21 U.S.C. § 844(a). Since the preceding sentence contains factors that must be considered in sentencing a person convicted of possession of a controlled substance, the words "[n]otwithstanding the preceding sentence"

in the third sentence reflect Congress's intent to direct the district courts to impose more severe penalties if the controlled substance is cocaine base.

In the second and third sentences of subsection 844(a), Congress referred to a violation or a conviction under "this subsection." The only crime defined in subsection 844(a) is the unlawful or intentional possession of a controlled substance.

The most serious flaw in Butler's argument that the third sentence of subsection 844(a) sets forth a separate crime of possession of a certain quantity of cocaine base is that the third sentence does not contain any reference to mental state. Unlike the first sentence, which refers to knowing or intentional possession, there is no reference to mens rea in the third sentence. To accept Butler's construction of the third sentence, we would have to conclude that Congress intended to impose severe punishment on persons found in possession of in excess of five grams of cocaine base who had no knowledge that it was in their possession, or who had no intent to possess it.

We would also have to ignore the fact that Congress required proof of knowing or intentional possession in the first sentence in defining the crime of possession of a controlled substance. Cocaine base is a form of cocaine. Any "compound, mixture, or preparation" which contains cocaine is listed as a Schedule II controlled substance pursuant to 21 U.S.C. § 812(c)(II)(a)(4). We reject the notion that the third sentence sets forth a separate crime of possession of cocaine base.

Our construction of the plain meaning of the words used by Congress compels the conclusion that subsection 844(a) contains only one crime. Accordingly, where, as here, it was undisputed during the trial that the controlled substance possessed by the defendant was cocaine base in an amount that exceeded five grams, the district court must consider this evidence in imposing sentence, without first requiring the jury to render a special verdict regarding whether the amount possessed exceeded five grams.

Our conclusion is consistent with the interpretation of subsection 844(a) by the Second

and Seventh Circuits. In *United States v. Monk*, 15 F.3d 25, 27 (2d Cir.1994), the Second Circuit held that quantity is not an element of the crime of possession of a controlled substance. In *United States v. Smith*, 34 F.3d 514, 519–20 (7th Cir.1994), the Seventh Circuit agreed with the Second Circuit and treated the quantity of the controlled substance as a sentencing factor.

Our view is also consistent with the law of this circuit that quantity is not an element of the offense of possession with intent to distribute a controlled substance, but is instead "relevant to the penalty provisions of section 841(b), and is a matter for the district court at sentencing." *United States v. Sotelo–Rivera*, 931 F.2d 1317, 1319 (9th Cir.1991), *cert. denied*, 502 U.S. 1100, 112 S.Ct. 1186, 117 L.Ed.2d 428 (1992).

We are mindful that four circuits have concluded that the third sentence of subsection 844(a) creates a separate offense. We believe that the Second and Seventh Circuit have presented the most persuasive analysis of the issue raised in this case.

In *United States v. Puryear*, 940 F.2d 602, 604 (10th Cir.1991), the Tenth Circuit held that subsection 844(a) defines two separate crimes: simple possession of any amount of a controlled substance, and possession of a specific quantity of cocaine base. The Tenth Circuit contrasted section 841, which separates the definition of the crime of possession of any controlled substance for distribution in subsection (a), headed "Unlawful acts," from the quantity possessed by the accused which is contained in subsection (b), entitled "Penalties." *Id.* The District of Columbia Circuit invoked the same rationale in *United States v. Michael*, 10 F.3d 838 (D.C.Cir.1993). The court noted that "the 1988 amendment to § 844(a) is buried in one great paragraph, in contrast to the penalty section of § 841, which is clearly set off in subsection 'b' and labelled 'Penalties.'" *Id.* at 840.

We agree with the Second Circuit's rejection of this rationale:

> We are not persuaded that the different architecture of the two statutes reflects a congressional intent to make the quantity of drugs an element of the crime of simple possession, but not an element of the more serious crime of possession with intent to distribute.

*United States v. Monk*, 15 F.3d at 27. The court also observed: "To reach a different conclusion just because § 841 is subdivided between crime and penalty, while § 844 is not, would make an idol to exalting form over substance." *Id.*

An attempt to distinguish section 841 and subsection 844(a) on the basis that, in drafting subsection 844(a), Congress failed to use headings to separate the definition of the crime from the penalties, overlooks the fact that the second sentence of subsection 844(a) clearly sets forth penalty provisions, and that the third sentence states that, notwithstanding the factors set forth in the preceding sentence, a more severe punishment must be imposed if the controlled substance is cocaine base.

In *United States v. Sharp*, 12 F.3d 605, 606–07 (6th Cir.1993), the Sixth Circuit reversed a judgment of conviction of simple possession of cocaine base pursuant to subsection 844(a) because the trial court instructed the jury that they were not required to decide the amount involved. The court held that because the quantity of crack cocaine possessed by the accused under section 844(a) can result in a felony conviction, "the facts relevant to guilt or innocence of that crime—including possession of a quantity of crack cocaine exceeding five grams—were for the jury to decide." *Id.* at 609. The Fifth Circuit relied on similar reasoning in *United States v. Deisch*, 20 F.3d 139 (5th Cir.1994).

We agree with the Seventh Circuit's response to the constitutional questions raised in *Sharp* and *Deisch*. *Smith*, 34 F.3d at 519–20. The principle that a defendant is entitled to a jury determination of any fact that converts his punishment from a misdemeanor into a felony is seriously undercut by the fact that the "'Sixth Amendment has never been thought to guarantee a right to jury trial determination of the appropriate punishment to be imposed on an individual.'" *Id.* at 519 (quoting *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)). In *Spaziano*, the Supreme Court noted that the

qualitative difference between the death penalty and other punishments does not require imposition of the penalty by a jury. 468 U.S. at 459, 104 S.Ct. at 3161–62; *see also Walton v. Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511 (1990) (Sixth Amendment does not require that the specific findings authorizing imposition of a death sentence be made by the jury).

■ Relying on Deisch, Butler argues that "[a] felony conviction under § 844(a) requires a person knowingly possess cocaine base". (Appellant's opening brief at 12) (emphasis added). Accordingly, Butler maintains that "[t]he only lesser included offense that Defendant could have been convicted of is the misdemeanor offense of possession of a controlled substance." *Id.* Lastly, he contends that since he was indicted for possession with intent to distribute a controlled substance, under Deisch, the judgment must be reversed because he was never indicted for the separate offense of simple possession of a controlled substance. *Id.* at 13. As set forth above in our summary of the pertinent facts, here Butler requested that the court instruct the jury that simple possession of cocaine base was a lesser included offense in the crime charged in the indictment. Thus, any alleged due process or Fifth Amendment error in the entry of the judgment of conviction of that offense was invited.

■ Butler argues that the ambiguity of the third sentence of subsection 844(a) calls for application of the rule of lenity. The rule of lenity in the sentencing context means that a court " 'will not interpret a federal criminal statute so as to increase the penalty it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' " *United States v. Bland*, 961 F.2d 123, 128 (9th Cir.), *cert. denied*, 506 U.S. 858, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992) (citation omitted).

The rule of lenity is " 'not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seized everything from which aid can be derived it is still left with an ambiguous statute.' " *United States v. Crowell*, 9 F.3d 1452, 1455 (9th Cir.1993), *cert. denied*, — U.S. —, 115 S.Ct. 138, 130 L.Ed.2d 79 (1994) (citation omitted). "A statute is not ambiguous simply because it is *possible* to construe [it] narrowly.... Nor does a division of judicial authority necessarily trigger the rule." *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir.1991).

The rule of lenity does not apply here. Whatever ambiguity exists in the language and structure of section 844(a) can be resolved through the application of statutory construction principles. *See United States v. Alfeche*, 942 F.2d 697, 699 (9th Cir.1991) (application of rule of lenity not required where the court's interpretation avoided absurd results and was consistent with the language of the statute and defendants offered no indication that Congress intended their interpretation).

In sum, we hold that the first sentence of subsection 844(a) establishes the crime of possession of a controlled substance. The second and third sentences of subsection 844(a) are penalty provisions which set forth factors to be determined by the sentencing court if the defendant is convicted of possession of a controlled substance. Accordingly, a trial court is not required to instruct the jury that it must determine the quantity of cocaine base in order to sustain a pursuant to a conviction pursuant to § 844(a).

AFFIRMED.

CANBY, Circuit Judge, concurring in part and dissenting in part:

I concur fully in Parts I and II of Judge Alarcon's majority opinion, which set forth the facts and hold that Butler's arrest was supported by probable cause.

I respectfully dissent, however, from Part III of the opinion, which holds that the quantity of cocaine base is a sentencing factor rather than an element of the crime under 21 U.S.C. § 844(a).

As the majority opinion points out, quantity is treated as a sentencing factor under § 841(b) (possession of controlled substance with intent to distribute), but the quantity requirements in that subsection are clearly

and separately set out in a sentencing context. The structure of § 844(a) is notably different, and properly led the Tenth Circuit to a conclusion directly contrary to that reached by the majority today.

> [S]ection 844(a) does not attempt to divorce the prohibited act of drug possession from the drug quantities possessed. The statute contains no separate penalty section, but rather interweaves both definitional and penalty provisions throughout. Presented with this schema, we conclude that the statute makes drug quantity an integral part of the crime definition.

*United States v. Puryear,* 940 F.2d 602, 603–04 (10th Cir.1991).

The majority opinion concludes that the third sentence of § 844(a) cannot state a "separate crime" of possession of a certain quantity of cocaine base because that sentence lacks any requirement of *mens rea.* But there is no necessity that the third sentence stand alone. In the hodge-podge that is the single paragraph of § 844(a), it is perfectly acceptable to add the third sentence's element of a certain quantity of cocaine base to the first sentence's elements that the offender "knowingly or intentionally ... possess a controlled substance." I would so construe § 844(a), and require quantity to be pleaded and proved to the jury.

The strongest reason for concluding that quantity is an element of the crime under § 844(a) is that, for a first offender, quantity determines the difference between a felony and a misdemeanor. This point was best made by the Fifth Circuit, when it held that the identity of the substance cocaine base (which has the same effect of converting a misdemeanor first offense into a felony) was an element of the crime, rather than a sentencing factor.[1] *United States v. Deisch,* 20 F.3d 139 (5th Cir.1994). The Fifth Circuit relied in large part on the Fifth Amendment right to indictment by grand jury. Noting

that an indictment must allege the elements of the offense, the Fifth Circuit stated:

> if an indictment is required *because* the punishment may be infamous *if* (and only if) cocaine base is what is possessed, then it is wholly illogical to authorize a punishment of that character even though the indictment does not allege cocaine base.

*Id.* at 147. The court thus held that

> where an offense that is otherwise a misdemeanor becomes a felony if committed in a certain way or with certain consequences, the particular attribute that makes it a felony is an element of the offense, which must be alleged in the indictment and proved at trial.

*Id.*

This reasoning applies as well to the quantity of cocaine base. Thus, the fact that the quantity provision of § 844(a) converts a misdemeanor into a felony led the Sixth Circuit to conclude that quantity must be pleaded and proved as an element of the crime. *United States v. Sharp,* 12 F.3d 605, 608–09 (6th Cir.1993). The court emphasized the serious consequences, such as loss of civil rights, of a felony conviction. *Id.* at 608.

The majority opinion states that the reasoning of *Deisch* and *Sharp* are seriously undercut because the Sixth Amendment has never been interpreted to guarantee a right to have a jury determine the appropriate punishment to be imposed. But the reasoning of *Deisch* is based on the Fifth Amendment right to indictment by grand jury, not the Sixth Amendment. And *Sharp* points out that none of the Sixth Amendment cases cited to it involved instances where a misdemeanor could be converted into a felony by the factor in issue. *Sharp,* 12 F.3d at 608 n. 1. *Deisch* and *Sharp* remain convincing.

In my view, the jury should not convict a defendant of what may be a misdemeanor, only to have the judge turn it into a felony by a sentencing finding. Because neither

---

1. This appeal does not present the issue whether identity of the substance cocaine base is an element of the crime. Possession of cocaine base was charged in the indictment and found by the jury. The majority opinion therefore correctly avoids any ruling on that question. The majority's conclusion that quantity is a sentencing fac-

tor does not dictate a similar result for identity of the substance. *See United States v. Michael,* 10 F.3d 838, 842 (D.C.Cir.1993) (concluding that identity of substance is element of the crime but not addressing quantity, governed by "quite different" statutory language).

§ 844(a) nor its legislative history compel such a result, the factor of quantity should be an element of the crime. I would so hold.