UNITED STATES of America, Plaintiff,

v.

Sarah Jane SCRANTON, Defendant.

No. CR 97–081–N–EJL.

United States District Court,
D. Idaho.

Nov. 6, 1997.

Barry McHugh, U.S. Attorney's Office, Coeur d'Alene, for U.S.

Gerald Smith, Federal Defender's Office, Spokane, WA, for Sarah Jane Scranton, defendant.

## ORDER

LODGE, Chief Judge.

This criminal action was heard by the Court on November 4, 1997, in Moscow, Idaho. By way of an Amended Information, the Defendant, Sarah Jane Scranton, was charged in count one with maintaining a structure on Forest Service Road # 9553, without proper authorization, in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(a), and in count two with blocking, restricting or otherwise interfering with the use of Forest Service Road # 9553, in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.12(d).

At trial, Forest Service law enforcement officer Peter Deane testified that the Defendant was found perched on top of a tripod structure in the center of Forest Service Road # 9553 on September 24, 1997. The tripod was approximately thirty feet tall; near the top of the tripod a plywood platform supported the Defendant. Forest Service officials used a "cherry picker" to elevate law enforcement officers to the platform level. As they did so, the Defendant placed her arms inside a welded, L-shaped metal pipe attached to a tripod leg. The Defendant was informed that her conduct constituted a violation of federal regulations and she was asked to leave the tripod. The Defendant refused, stating that she would not quit the tripod "until the logging stopped."

Forest Service officers attempted to remove the Defendant's arms from the metal pipe. When their efforts proved unsuccessful, they cut the strap securing the pipe to the tripod leg. After approximately twenty minutes, the Defendant stated that her arms were going numb and that she was willing to leave the tripod platform. The Defendant was then removed and arrested.

The Defendant asserted numerous defenses to the criminal charges. The Court will address each in turn.

### 1. Maintaining a Structure

The Defendant contends that the language of the regulation supporting count one is ambiguous and therefore the rule of lenity mandates an acquittal. Specifically, the Defendant asserts that she did not "maintain" a structure within the meaning of the regulation. However, the Defendant's affirmative refusal to leave the tripod "maintained" the structure under the plain meaning of that word. The obvious purpose of the Defendant's conduct was to maintain the position of the structure in the middle of the roadway. The rule of lenity is "not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the" regulation. *United States v. Butler,* 74 F.3d 916, 924 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 392, 136 L.Ed.2d 308 (1996). Here, the language of the regulation is not ambiguous.

### 2. Unconstitutionally Vague

The Defendant contends that the language of the regulation supporting count two is unconstitutionally vague. The Defendant also contends that a facial challenge to the regulation is warranted because the regulation may implicate constitutionally protected conduct.

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of consti-

tutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In this case, that task is easy. The regulation prohibits conduct that blocks, restricts or otherwise interferes with the use of a Forest Service road. As such, the regulation does not "reach a substantial amount of constitutionally protected conduct." The Defendant does not possess a particular constitutional right to block traffic. And the regulation does not prevent the expression of First Amendment conduct in a multitude of other, lawful ways. *See id.* at 496, 102 S.Ct. 1186. Therefore the vagueness challenge "must be examined in the light of the facts of the case at hand." *Id.* at 495 n. 7, 102 S.Ct. 1186. Here, the conduct of the Defendant clearly fell within the scope of the regulation. The Defendant blocked the Forest Service Road by maintaining the tripod structure in the roadway.

*3. Selective Enforcement*

■ The Defendant contends that the government's case against her is the product of selective prosecution. She asserts that others similarly situated were not prosecuted and that government officials enforced the criminal statutes in a selective manner. In support of this contention the Defendant relies on the trial testimony of Steven Didier, a federal law enforcement officer, Wayne Price, legal coordinator for the Cove/Mallard Coalition, and proffered Defendant's exhibits C and D.[1]

Officer Didier testified regarding an incident that occurred on August 18, 1997. On that date, Mr. Didier assisted in the arrest of an individual protesting logging activities. At the site of the arrest a member of the Cove/Mallard Coalition alleged that earlier in the day a truck driver had kicked him in the back. Officer Didier investigated the complaint and directed another law enforcement officer to issue a citation to the truck driver for assault. Later, the individual who had lodged the complaint asked Officer Didier to withdraw the charge, and Officer Didier did so.

Wayne Price testified regarding his efforts to inform government officials of alleged violations of federal law. In a letter dated November 17, 1995 and addressed to Barry McHugh, Assistant United States Attorney for Idaho, Mr. Price reported "[v]arious violations of federal environmental laws" that allegedly had occurred in the Nez Perce National Forest and recounted several incidents where an environmental activist allegedly had been threaten or assaulted. On February 13, 1996, Mark Haws, Chief of the Civil Division of the Office of the United States Attorney Office for the District of Idaho, responded to Mr. Price's letter. Mr. Haws advised Mr. Price that the information regarding the alleged environmental violations was not sufficient to trigger an investigation, but noted that specific documentation could be forwarded to his office and he "could then attempt to ascertain the appropriate entity to evaluate your facts and decide what, if any, legal action should be taken." As to the alleged threats and assaults, Mr. Haws observed that "[t]hese seem to allege common law offenses which should be referred in the first instance to local law enforcement authorities for investigation" as his office had "neither the resources nor the investigative mission to handle these matters in the first instance."

■ "To succeed on a claim of selective prosecution, the Defendant has a two-part burden. [She] must establish both that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution ... was based on an impermissible motive." *United States v. One 1985 Mercedes*, 917 F.2d 415, 420 (9th Cir.1990); *United States v. Buffington*, 815 F.2d 1292, 1305 (9th Cir.1987). In this case, the evidence does not suggest the existence of either factor. The Defendant has not shown that others similarly situated have been treated differently. Mr.Price alleges the occurrence of criminal violations that are different in kind from the charges filed against the Defendant

1. The Court reserved it ruling on the government's objection to Defendant's exhibits C and D. For the reasons set forth in this Order, the Court finds that the exhibits are not relevant to the charges facing the Defendant.

and that transpired at least two years prior to the Defendant's arrest. Similarly, there is nothing to indicate that Mr. Didier, or federal law enforcement officers in general, have acted differently in response to a complaint because of the identity of the alleged victim. Just as important, nothing was presented by the Defendant that shows her prosecution was the product of an improper motive. To the contrary, the only evidence put forward by the Defendant demonstrates that government officials, including Mr. Deane, Mr. Didier, and Mr. Haws, have acted properly under the circumstances. Accordingly, the Defendant cannot rely on selective enforcement as a defense.

### 4. Necessity Defense

At trial, the Defendant proffered the testimony of Gary Macfarlane in an effort to invoke the necessity defense. Mr. Macfarlane's testimony would have related his conversation with the Defendant, several weeks prior to her arrest, regarding certain letters that had been sent to government officials in 1995 and 1996. In the letters, several individuals, but not the Defendant, allege that certain timber harvest activities in the Cove/Mallard area violate relevant environmental standards.

■ Before a Defendant can invoke the necessity defense she must make a colorable showing that she engaged in "direct civil disobedience" and that (1) she was faced with a choice of evils and chose the lesser; (2) she acted to prevent imminent harm; (3) she reasonably anticipated a direct causal relationship between her conduct and the harm to be averted; and (4) she had no legal alternatives to violating the law. *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir.1991), *cert. denied*, 504 U.S. 990, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992). Here, the Defendant's conduct does not qualify as "direct civil disobedience" because she did not violate the law which was the "object of protest." *Id.* Consideration of the four factors set forth in *Schoon* demonstrates that the Defendant's case involves only "indirect civil disobedience." *Id.* at 195–96.

■ To make a colorable showing on the necessity defense the Defendant must demonstrate that her conduct was necessary to avoid a particular and immediate harm. *Id.* at 197–98. In the instant matter, there is no evidence to support these factors. At the time of her arrest, the Defendant stated that her criminal conduct was necessary to "stop the logging." However, a violation of law cannot be excused by the Defendant's effort to prevent a "generalized harm" *Id.* at 197. Likewise, the fact that the Defendant may have shared Mr. Macfarlane's belief that certain environmental standards had been compromised does not mean that she is free to engage in criminal behavior. "The law could not function were people allowed to rely on their subjective beliefs and value judgments in determining which harms justified the taking of a criminal action." *Id.*

The Defendant also fails to meet her burden on the third factor of the necessity defense. Under the third factor there must be a causal relationship between the Defendant's criminal conduct and the avoidance of the harm. Here, there is no nexus between the Defendant's action and the prevention of the alleged evil. The Defendant's effort to block the Forest Service road cannot remedy the harms Mr. Macfarlane complains of; "instead, it takes another volitional actor not controlled by the protestor to take a further step." *Id.* at 198.

Finally, the fourth factor of the necessity defense requires the Defendant to demonstrate the lack of legal alternatives. *Id.* at 198. The Defendant fails to address this factor. If the Defendant believes that certain aspects of the Jack Timber Sale are in violation of environmental standards, the Defendant has viable legal alternatives to the unlawful conduct. The Defendant could pursue administrative or judicial remedies to cure each alleged environmental violation cited by Mr. Macfarlane. *Id.* at 198–99.

The Defendant has failed to put forward any evidence that colorably shows the existence of the four factors relevant to the necessity defense. The Defendant's offer of proof, therefore, is insufficient as a matter of law to support the proffered defense.

Decision

Having reviewed the evidence presented at trial, as well as the applicable law, the Court finds the Defendant guilty of the offenses charged in the Amended Information.