Zachary LYONS; et al., Plaintiffs–Appellants,

v.

CITY OF SEATTLE, a Municipal Corporation; et al., Defendants–Appellees.

No. 04–35808.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2006.

Filed Dec. 21, 2006.

Jo–Hanna Read, Esq., Seattle, WA, for Plaintiffs–Appellants.

Stephen Powell Larson; David J. Onsager, Esq., Tobin E. Dale, Esq., Stafford Frey Cooper, Seattle, WA, for Defendants–Appellees.

Before: SCHROEDER, Chief Circuit Judge, KLEINFELD and BEA, Circuit Judges.

MEMORANDUM *

The claims at issue in this appeal [1] are viable only if the police lacked probable cause to arrest the plaintiffs.[2] "Probable

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. The order appealed from did not address the assault or battery claims.

2. See *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides for a

method of vindicating federal rights elsewhere conferred.") (quotations omitted); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir.2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."); *Hanson v. Snohomish*, 121 Wash.2d 552, 852 P.2d 295, 301 (1993) ("[P]robable cause is a complete

cause exists when 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed." [3] The existence of probable cause is analyzed from the perspective of objectively reasonable officers [4] at "the time the arrest is made" [5] and is based on the "collective knowledge of police officers involved in the investigation," [6] or, in this case, the "circumstances known to the arresting officer[ ] or within the knowledge of other officers at the scene[ ]...." [7] Of course, the officers generally need "individualized suspicion of wrongdoing." [8]

The district court granted summary judgment to the defendants because it concluded that the police had probable cause to believe that the plaintiffs disobeyed at least one lawful order to disperse.[9] We review *de novo* and will affirm, if, taking all the facts and inferences therefrom in the light most favorable to the plaintiff, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [10]

Captain Oliver and Lieutenant Sano both declared that the police issued three dispersal orders over a public announcement system at 4th Avenue and Pine. Captain Oliver further stated that some protestors followed these orders, dispersing via side streets. Others remained with the crowd, which began to move north on 4th Avenue and continued not only protesting, but also blocking intersections, and throwing rocks and shooting home-made bottle rockets at police. The officers declared that similar dispersal orders were given in a similar manner at the next four intersections. And, at least until the group passed the intersection at 4th Avenue and Lenora, some protestors dispersed subsequent to each order. The remaining crowd, however, continued moving north after each order. Eventually, the police boxed in the protestors on 4th Avenue (preventing protestors from traveling north or south on 4th Avenue, or east or west via side streets) and placed them under arrest.

---

defense to an action for false arrest and imprisonment.").

**3.** *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.1994) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986)).

**4.** *See Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

**5.** *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir.1995).

**6.** *United States v. Butler*, 74 F.3d 916, 921 (9th Cir.1996).

**7.** *Dubner v. City and County of San Francisco*, 266 F.3d 959, 966 (9th Cir.2001).

**8.** *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 841 (9th Cir.2003) (emphasis omitted) (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)).

**9.** Seattle Municipal Code 12A.12.020 provides that "[a] person is guilty of failure to disperse if ... [h]e congregates with a group of four (4) or more other persons and there are acts of conduct within that group which create a substantial risk of causing injury to any person or substantial harm to property[ ] and ... [h]e refuses or intentionally fails to obey a public safety order to move, disperse, or refrain from specified activities in the immediate vicinity."

**10.** FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gasho v. United States*, 39 F.3d 1420, 1427 (9th Cir. 1994) ("[A]s the party moving for summary judgment, [the defendants] must show that there is no genuine issue as to probable cause and that it is entitled to judgment as a matter of law.").

Declarations made by protestors and legal observers, and submitted by the plaintiffs, acknowledge or do not deny that the police gave these orders to disperse. Even the plaintiffs do not deny that the police ordered them to disperse. They say only that they did not hear the orders until it was too late to comply. Saying one did not hear an order is not the same as saying an order was not given, or that one was not in a place where it was reasonable to assume he would have heard the order. A person at an airport may truthfully say that he did not hear the gate change announcement because he was engrossed in a conversation, reading a book, or doing work. But the passenger has not denied the airline's contention that it made an announcement merely by saying that he did not hear it. The DVDs submitted by both sides corroborate the evidence of loud, clear, repeated dispersal orders.

Neither the plaintiffs nor any of their supporting declarants claim that the police stopped people from leaving 4th Avenue at the site of the three initial dispersal orders. Plaintiffs admit that "the east exits from 4th [Avenue] were still open" as they passed the second and third intersections. Additionally, the declarations submitted by and on behalf of the plaintiffs confirm that a number of people complied with the dispersal orders by entering a bar on 4th Avenue. Plaintiffs acknowledge seeing people comply with the dispersal orders in this manner. Thus, when the police arrested the protestors, the police knew they had given at least four dispersal orders with which the protestors could have, but did not, comply. That is enough to support the officers' belief that there was a fair probability that the protestors had committed the crime of failure to disperse. Accordingly, probable cause existed to arrest the protestors.

We are unpersuaded by plaintiffs' argument that the officers lacked *individualized* suspicion that each plaintiff heard a dispersal order and could have complied. First, it is irrelevant whether each plaintiff actually heard an order. What is relevant is whether the police issued the orders and reasonably believed there was a "fair probability" that the plaintiffs heard at least one of the orders, and voluntarily disobeyed.[11] If an officer orally orders a deaf man to disperse, and the man simply smiles at the officer, it is still reasonable for the officer to believe there is a "fair probability" the man has refused the dispersal order even though in truth he did not. There is no evidence that the police knew or suspected the plaintiffs did not hear the orders.

Second, when the police boxed in the protestors, the plaintiffs acted as leaders and spokesmen, even negotiating with the police on the protestors' behalf. Moreover, the plaintiffs stood with the group and took part in its collective conduct. In short, the police had no reason to believe that the plaintiffs were strangers (or even latecomers) to the protest.[12] Consequent-

---

**11.** *See United States v. Butler,* 74 F.3d 916, 920 (9th Cir.1996) ("Courts look to the totality of circumstances known to the officers in determining whether there is probable cause for an arrest.") (quotation omitted); *Id.* ("Probable cause exists when the police know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.") (quotation omitted); *see also Michigan v. DeFillippo,* 443 U.S. 31, 36,

99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime.... When the officer arrested respondent, he had abundant probable cause to believe that respondent's conduct violated the terms of the ordinance.").

**12.** Contrast *Dubner v. City and County of San Francisco,* 266 F.3d 959, 966 (9th Cir.2001) (finding that the defendants failed to show

ly, the police reasonably believed there was a "fair probability" that the plaintiffs, like others in the protest, had heard dispersal orders with which they could have complied. If the police issue several dispersal orders over a building's public address system and ninety-five percent of the people in the building disperse, the police may arrest the people remaining in the building for failure to disperse, even though the police do not actually see or hear (or otherwise know) that any individual person intentionally refused a dispersal order.

**AFFIRMED.**

probable cause because of "the total lack of evidence as to who arrested [plaintiff] or *what* *they knew at the time")* (emphasis added).